UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
(Baltimore Division)

| | | |
|---|---|---|
| **In Re:** | * | |
| **Robert Glen Cockey, II** | * | Case No. 17-18561 |
|     Debtor | * | (Chapter 7) |
| * * * * * * * * * | * | * * * * |
| **Stefan Popescu** | * | |
|     1901 Gough Street, | | |
|     Baltimore, MD 21231 | * | |
| And | * | Adversary No. _____ |
| **Gough Street Liquor, LLC** | * | |
|     1306 S. Charles St, | | |
|     Baltimore MD 21230 | * | |
| | * | |
|     **Plaintiffs,** | * | |
|     vs. | * | |
| **Robert Glen Cockey, II,** | * | |
|     4722 Ruby Avenue | | |
|     Halethorpe, MD 21227 | * | |
|     **Defendant,** | * | |

* * * * * * * * * * * * *

**COMPLAINT TO DETERMINE DISCHARGEABILITY
<u>OF DEBT</u>**

Plaintiffs, Stefan Popescu (hereafter "Popescu"), and Gough Street Liquor, LLC (hereafter "GSL"), by their undersigned counsel, bring this Complaint for the Determination of

Dischargeability of Debt against Debtor Robert Cockey, II. (hereafter "Debtor") and state as follows:

## Jurisdiction and Venue

1. This Court has jurisdiction over this Complaint pursuant to 28 U.S.C. § 1334.

2. Venue is appropriate in this Court pursuant to 28 U.S.C §§ 1408 and 1409.

3. This matter is a core proceeding under 28 U.S.C § 157.

## Parties

4. Plaintiff, Popescu, is a resident of Baltimore City, Maryland.

5. Plaintiff, GSL, is a Limited Liability Company owned entirely by Popescu that operates a restaurant and Bar in Baltimore City, Maryland.

6. Debtor, is an individual and resident of Halethorpe, Maryland.

## Facts

7. On March 1, 2014, GSL entered into a Management Agreement with Debtor to manage and operate GSL. See attached, Exhibit 1. The Debtor was required to operate GSL independently and without oversight of ownership.

8. The Management Agreement (the "Agreement") required the Debtor to pay expenses of GSL including all taxes, insurance and maintenance of the Premises. See Exhibit 1, Section 5.1, Section 7.3 and Section 8.1.

9. The Agreement requires Debtor to properly report and pay sales tax to the State of Maryland. See Exhibit 1, Section 21.

10. The Agreement requires all venders to be paid in cash and in full so that GSL would not create or incur any debts with venders which could later become debts of the Plaintiffs. See Exhibit 1, Section 5.2

11. On behalf of GSL, the Debtor requested and was granted credit by Liquor Wholesalers, and others. The Debtor purchased liquor on credit instead of paying COD in violation of the Agreement.

12. To gain said credit, Debtor did intentionally and fraudulently represent to several suppliers that he was a member of GSL, using the title of "owner" in e-mail communications.

13. In Addition, the Debtor violated the Agreement by not paying rent, taxes, insurance, and maintenance fees as required by the Agreement. The Defendant also failed to pay utilities, personal property tax, liquor license renewal, and venders as required by the Agreement

14. Throughout the duration of the Management Agreement, Debtor used the funds of GSL to pay for his own personal expenses and to fund his self-gratifying lifestyle, rather than use the funds to pay for the expenses of GSL. Bank statements show the Debtor misappropriated a total of $87,853.57. Attached as Exhibit 2 is an extract of expenses used for personal use rather than for business expenses.

15. The Extract shows the Debtor misused $67,853.09 on cash withdraws, $5,306.05 on Gentlemen's clubs, cruises, etc., $2,734.82 on gambling at Horseshoe Casino, $1,215.26 on restaurants and dining, $2,041.55 on golf outings, $6,843.88 at convenient stores, and $1,858.92 on sporting equipment,

16. The bank statements show that the Debtor made multiple cash withdraws from ATMs the same day he was making additional withdraws at Horseshoe Casino, furthering the financial loss of GSL.

17. In addition to misappropriating the funds of GSL, the Debtor failed to deposit all income generated by GSL.

18. According to the Point of Sales computer that the Debtor used during the course of his management, GSL generated sales of $1,091,650.42 between January 2014 and March 2016.

19. However, the Debtor only deposited $937,020.77 into the operating account during the same period indicating that $154,629.65 in funds earned by the business didn't make its way from the cash register to the bank.  Attached as Exhibit 3 is an analysis of missing funds.

20. As a result of the Debtor's misappropriation of operating funds, many of the financial obligations of GSL became past due.

21. In March of 2016, Plaintiffs terminated the Management Agreement with the Debtor because he failed to pay rent to the landlord as required in the Agreement.

22. After the Debtor was terminated, the Plaintiffs learned that there was unpaid tax liability and unpaid vendors.

23. The Plaintiffs were forced to pay the tax liability, vendors, utilities and other bills because GSL and/or Popescu were still liable for those debts.

24. The Plaintiffs later learned the Debtor was spending GSL funds on his personal lavish lifestyle.

25. If the Debtor had not misappropriated all the income GSL earned, GSL would have been able to timely pay all of its debts.

26. As a result of the Debtor's misappropriation of funds, the Plaintiffs were harmed by the Debtor.

27. On May 10, 2017, the Plaintiffs obtained a Default Judgement against the Defendant in the amount of $78,163.84.

28. On June 22, 2017, the Debtor filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code.

## COUNT I
### (Non-Dischargeability-11 U.S.C §523(a)(2))

29. Paragraphs 1-28 are hereby incorporated by reference as is fully stated herein.

30. The Debtor intentionally and knowingly subjected the Plaintiffs to harm.

31. Had the Plaintiffs known that the Debtor would have misappropriated the funds, it would not have made the Management Agreement.

32. The Plaintiffs reasonably relied on the Debtor to operate the business and pay business expenses as they became due.

33. As a result of this reliance, the Plaintiffs were harmed.

34. Because of said malicious, willful, and fraudulent acts, Plaintiffs had to pay various creditors for bills incurred by the Debtor.

35. Based on these false representations and fraud, Debtor incurred a debt with Plaintiffs as contemplated by 11 U.S.C 523(a)(2).

WHEREFORE, Plaintiffs respectfully requests that (a) the Debtors be denied a discharge of their debt to the Plaintiffs in the amount of $78,163.84 plus interest, (b) the Plaintiffs be awarded attorney's fees and costs, and (c) Plaintiffs have such other and further relief as this Court deems proper.

## COUNT II
### (Non-Dischargeability-11 U.S.C §523(a)(4))

36. Paragraphs 1-35 are hereby incorporated by reference as is fully stated herein.

37. Defendant did knowingly and fraudulently use funds from the bank account for GSL for his own personal expenses.

38. Rather than using the funds from the bank account of GSL to pay for Taxes, Rent, Insurance, and Maintenance Fees, the Defendant instead used the funds for personal expenses.

39. Based on this fraud, Debtor incurred a debt with Plaintiffs as contemplated by 11 U.S.C 523 (a)(4).

WHEREFORE, Plaintiffs respectfully request that (a) the Debtors be denied a discharge of their debt to the Plaintiffs in the amount of $78,163.84 plus interest (b) the plaintiffs be awarded attorney's fees and costs, and (c) plaintiffs have such other and further relief as this Court deems proper.

Respectfully Submitted,

s/ Michael S. Myers
Michael S. Myers #28450

Scarlett, Croll, & Myers, P.A.
201 North Charles Street, Suite 600
Baltimore, MD 21201-4110
Phone: (410) 468-3100
mmyers@scarlettcroll.com

{00187784.DOCX.1}